## Cryer *vs* Cooper.

ERROR TO THE FAYETTE CIRCUIT.

*Feme covert.    Trustee.    Executors..*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

CHANCERY.

*Case* 93.

*April* 26.

The case stated..

IN 1834, *Spencer Cooper* sent to his daughter, who had just intermarried with *James Cryer,* two young slaves, a boy and a girl; and there is abundant testimony conducing to the deduction that he had given or intended to secure those slaves to his said daughter's separate use, her husband being apparently insolvent and perhaps improvident.

The possession remained with *Cryer* and wife until March, 1837, when *Cooper,* apprehending that the slaves would be taken by some of *Cryer's* creditors, consulted counsel as to the best mode of securing them to his daughter; and the fruit of that consultation was a written contract between himself and Cryer, purporting that *Cryer* received the slaves as *Cooper's* bailee upon trust, to hold them for *Mrs. Cryer's* exclusive benefit during her father's "life and good pleasure," and subject to be taken away by him at any time, after a prescribed notice of his purpose.

In 1839, *Cooper* died, without having indicated any intention to reclaim the slaves; and in his will, he charged *Mrs. Cryer* with $1100, as an advancement, which was to be deducted from a general devise to her of an equal share of his estate, after her mother's death or second marriage, and he appointed her mother a trustee, to hold to his said daughter's separate use, the estate thus *"provided"* for her.

*Mrs. Cooper,* supposing that these two slaves had not been absolutely given to *Mrs. Cryer,* took and retained them in her character of her husband's executrix. And *Mrs. Cryer,* claiming them as her separate estate in equity, filed a bill for enforcing that trust.

The Circuit Court decreed that *Mrs. Cooper* should hold the legal title in trust for *Mrs. Cryer's* separate use,

Decree of the Circuit Court.

CRYER
*vs*
COOPER.

A father placed two slaves in possession of his daughter on marriage, 3 years afterwards took the covenant of her husband to hold them as the bailee of the father, to the use of the daughter, the father made his will and died, in which he charged the daughter with an amount about equal to the value of the slaves, and devises to her, on the death or marriage of his wife, (whom he appoints executrix,) an equal portion of his estate, less by the sum charged as aforesaid, and appointed the mother trustee for the daughter. Held that the slaves should be held by the mother as trustee, and the hire paid to the daughter.

and decreed also that she should account for the value of the use of the slaves from the time she took them as her husband's property until the date of the decree.

The executrix seeks the reversal of that decree.

Our deductions from all the facts exhibited in the record, is, that the slaves had, in fact, been given to *Mrs. Cryer*, for her separate use, by her father shortly after her marriage; and that the subsequent ostensible contract with *Cryer*, was intended only as a mean for securing that gift against *Cryer* and his creditors. Whatever may be its literal import, however, *she* ought not to be affected by it in equity. There having been a previous verbal gift to her exclusive use, the equitable trust thereby created could not have been defeated by the voluntary arrangement between the parties as against whom that trust was enforcible.

But, moreover, the written contract of bailment imports, in our opinion, an intention that the slaves should be held for *Mrs. Cryer* until her father should elect to revoke the trust. This he never did, but, by his will, virtually recognized and made it irrevocable, by charging her with an advancement to the amount of $1100, which, according to the proof, was about what he had advanced, if these slaves be included, at the price he put on them when he first gave them to her.

And we are of the opinion, also, that it was the testator's intention that his widow should be *Mrs. Cryer's* trustee, not only as to the estate expressly devised, but as to that also which had been previously advanced, as recognized by his will, and which, therefore, was considered by him as a portion of what he had "*provided*" for his said daughter's exclusive use.

It is our opinion and decree, therefore, that the decree of the Circuit Court be affirmed.

*Robinson & Johnson* for appellant; *M'Calla* for appellee.